339 P.3d 719

**AC, Respondent/Plaintiff–Appellee,**

v.

**AC, Petitioner/Defendant–Appellant,**

and

**Child Support Enforcement Agency, State of Hawai'i, Respondent/Defendant.**

No. SCWC–12–0000808.

Supreme Court of Hawai'i.

Nov. 28, 2014.

Micky Yamatani, for petitioner.

Michael A. Glenn, for respondent.

RECKTENWALD, C.J., NAKAYAMA, and McKENNA, JJ., and Circuit Judge TRADER, in place of ACOBA, J., Recused, with POLLACK, J., Concurring Separately.

Opinion of the Court by
RECKTENWALD, C.J.

This case requires us to consider the circumstances under which a family court can limit the time for trial on a petition to determine custody over minor children. Father and Mother, who were never married, are the biological parents of two minor children, Son and Daughter. Mother and Father eventually separated, and Father sought custody of Son and Daughter. The instant appeal arises out of Father's Petition for Custody, Visitation and Support Orders After Voluntary Establishment of Paternity, which sought sole physical and legal custody of the children, and sought to exclude Mother from visitation.

Prior to and during the pendency of the proceedings on Father's petition, Father and Mother filed several competing petitions for orders of protection against each other. The family court granted Father's petition for an order of protection against Mother. Thereafter, Father relocated with Son and Daughter to Texas without obtaining prior authorization of the family court.

The family court considered Mother's and Father's competing custody petitions during a trial that lasted approximately three hours on June 25, 2012. It appears from the record that the family court had set a three-hour limit beforehand. Although Father was able to present his evidence, the family court cut short Mother's evidence despite her motion for additional time, and awarded sole legal and physical custody to Father. A divided panel of the Intermediate Court of Appeals (ICA) affirmed that decision.

Mother asserts that the family court erred by strictly enforcing a preset time limit that was too short given the complexity of the case, and excluded critical testimony bearing upon the best interests of Son and Daughter. We agree with Mother. While trial courts are given considerable discretion in managing their calendars, the family court's strict enforcement of the time limit here unduly curtailed Mother's ability to present evidence relevant to the proper determination of the children's best interests. Accordingly, we vacate the ICA majority's decision and re-mand to the family court for further proceedings.

## I. Background

The following factual background is taken from the record on appeal.

Mother and Father apparently began dating in 2005 and had two children together: Son, who was born in 2005, and Daughter, who was born in 2008. Mother and Father separated in 2009, and Mother thereafter lived with Son, Daughter, and Mother's child from a previous relationship ("Older Son"). Father subsequently married another woman and lived with his wife and Stepdaughter in Texas. In the summer of 2011, Father, his wife, and Stepdaughter relocated to Hawai'i.

### A. Family court proceedings

Upon relocating to Hawai'i, Father filed a petition for an order of protection against Mother on behalf of himself, Son, Daughter, and Stepdaughter. The family court issued a temporary restraining order. Approximately one month later, Father filed a Petition for Paternity or for Custody, Visitation and Support Order After Voluntary Establishment of Paternity, which is the subject of the instant appeal. Father's custody petition sought full physical and legal custody of Son and Daughter, and sought to preclude visitation by Mother due to allegations of "[r]eckless child endangerment and neglect and failure to provide a safe and enriching environment for the children."

Mother filed a competing custody petition, also seeking full physical and legal custody of Son and Daughter. Mother also filed a petition for an order of protection against Father on behalf of herself, Son, Daughter, and Older Son. The family court issued a temporary restraining order on behalf of Mother and Older Son.

At the conclusion of a trial on Mother's and Father's petitions for an order of protection, the family court denied Mother's petition on the grounds that Mother was not credible and did not establish her need for an order of protection. The family court granted Father an order of protection against Mother, but removed Son and Daughter from

the order. The family court found there was past domestic abuse and a threat of harm to Father from Mother, but that there were no safety concerns for Son and Daughter. Since Son and Daughter were already in the custody of Father, no custody orders were entered at the time.

Thereafter, Mother filed a motion to modify visitation, which sought to change the third party responsible for supervising her visitation with Son and Daughter. Mother complained that her visits were supervised by the pastor of Father's church and held at the pastor's apartment, where the children "were required to do church related activities for the first hour" of the two-hour visit. Mother also declared that she was prohibited from giving the children food or taking pictures with them. During a subsequent visit, the pastor presented Mother with a document entitled "Visitation Rules" that purported to set forth rules imposed by the family court judge, including that Mother had to speak English at all times, that conversations between Mother and the children must be audible to supervising personnel, and that Mother's two-hour visits were to include one hour of "class work" for the children.

According to Mother, two days after the visit involving the "Visitation Rules," police officers arrested her after Father notified them she had violated the family court's temporary restraining order. The day after Mother was released from custody, she had another visit with Son and Daughter, during which police officers again arrived, this time informing Mother that Father had reported her for violating the temporary restraining order and had provided the time and place of her visit with the children.

On the same day Mother's motion to modify visitation was filed, the family court held a return hearing regarding the State Custody Investigation Unit's (CIU) report on the custody of the children. Father was not present at the hearing, and his counsel informed the court that he had relocated with Son and Daughter to Texas. Father did not have the court's permission to remove Son and Daughter from Hawai'i, and the family court's minutes reflect that removal of the children was in violation of the court's order.[1] Father was ordered to return the children to Hawai'i within 30 days unless an order allowing relocation pending trial was granted before then.

The family court scheduled Mother's and Father's custody petitions for a "half-day trial." The record does not reflect the basis for this limitation, or whether either party voiced any concern about it.

The CIU report noted Mother's and Father's "concerns" regarding the other's parenting. For example, Father was concerned that Mother did not emphasize education, was physically and emotionally abusive (particularly when "menstruating or pregnant"), abused drugs and alcohol, lied, was unstable, and exposed the children to a "sexual lifestyle." Father also expressed concern that Older Son was a danger to Son and Daughter, but the CIU noted that a case involving allegations of sexual assault by Older Son against Son and Daughter had been closed by HPD and that the prosecutor's office had declined to accept the case. Father reported four incidents of domestic violence by Mother against Father.

Mother expressed her concern that Father had extreme anger issues, was abusive, did not provide a good example to the children, did not provide the children with educational activities despite his claim that he homeschooled them, had unstable relationships with women, and was never the children's primary caretaker. Mother reported over 50 incidents of domestic violence by Father against Mother. Mother also alleged that Father. was abusive to Older Son.

The CIU report indicated that interviews with the children could not be conducted because Father and the children had relocated to Texas. According to the report, the CIU also could not conduct a home visit with Father due to his relocation. Additionally, no home visit with Mother could be conduct-

---

1. The family court minutes state that, "Court noted Mother has not filed a motion for sanctions against Father for removing the children from the state of HI but the Court does find Father did violate the Court's order by doing so." The family court's order prohibiting the removal of the children from Hawai'i is not included in the record on appeal.

ed because she had relocated to Washington, and later to Sweden. Nevertheless, the CIU report recommended that Father have sole legal and physical custody of the children, and be permitted to relocate with the children to Texas, with Mother allowed unsupervised visitation.

Father subsequently filed a motion to allow the children to remain in Texas, which the family court granted. Father was awarded temporary sole legal and physical custody pending trial, with Mother allowed telephone and internet visits. The CIU was ordered to interview the children and to prepare a supplementary report prior to trial. The children were never interviewed.

Prior to trial, Mother submitted a witness list that included nine lay witnesses and two expert witnesses. Father submitted a witness list that included three lay witnesses.

The family court held a bench trial on the competing custody petitions. At the start of trial, the court did not address the length of trial or state on the record the amount of time available for trial. The court stated that it was most interested in testimony regarding the respective abilities of Mother and Father to care for Son and Daughter, so that it could determine "whether or not you're the right choice as a dad or you're the right choice as a mom to have the custody."

Father testified that he lived with his mother, wife of three years, Stepdaughter, and Son and Daughter in Texas, where he cared for Son and Daughter during the day and worked at night providing security and other services at a restaurant. Father stated that he could financially provide for the children in Texas because of his "massive support system in Texas."

Father testified that Son and Daughter told him they had been sexually abused while in Mother's custody, and that the children are currently receiving psychological counseling for the alleged abuse. Father stated his fear that Son and Daughter would be exposed to "things of a sexual nature" if Mother were to have unsupervised visitation with Son and Daughter. According to Father, Mother came to the United States as a "mail order bride" from Russia, and had worked as a stripper, escort, and masseuse. Father asked that Mother only be allowed supervised visitation of children if he was awarded custody because he was very concerned that Mother would take the children to Estonia or Sweden.

Father called no additional witnesses. The court noted that by this point Father had used 50 minutes of the time allocated, and Mother had used 25 minutes in cross-examining Father, which was the court's first indication on the record regarding how much time was available for the proceedings.

Mother's first witness was a male friend who had known Mother for fourteen years and considered her a very good parent. He testified that he visited Mother in Hawai'i several times and that it appeared the children were properly fed, clothed, and washed. He recounted several times when Mother stayed with him after complaining of abuse by Father. On one occasion, he noticed bruises on her arms that he attributed to Father's physical abuse of her.

The court custody investigator who prepared the CIU report testified next. The investigator recalled Mother's allegations that Father abused her, including incidents in which Father almost killed her by strangulation or suffocation, but the investigator was not sure whether she believed Mother. The investigator also recalled Mother's 15-year-old Older Son telling her that Father physically abused Mother three times per week. The abuse purportedly involved Father slapping, punching, and throwing things at Mother. Older Son told the investigator that he saw Mother with bruises and black eyes, and that Father had once chased him with a handgun. Next, the investigator related her interview with Older Son's father, who allegedly had observed Mother with black eyes and bruises.

The investigator also testified about her interview with Father's former wife, who told the investigator that Father had shoved, hit, and kicked her, and had pointed a gun at her during their relationship. Father's former wife also told the investigator that, after their relationship had ended, Father falsely accused her of physically abusing their children. Father's former wife feared Father

would retaliate against her for telling the investigator about these issues. The investigator also acknowledged that she had not personally visited Father's home in Texas to investigate or verify the children's living conditions there.

Before Mother's counsel called her next witness, the court warned him that time for witness testimony would be limited, stating: "We're going to finish this case at 4:30 today, so, Counsel, use your time wisely. Because if we don't get to an opportunity to hear from your client, that will be based upon your choice."

The next witness, a former neighbor of Mother's, testified that her children often played with Mother's children, and that the children appeared to be well cared for. The neighbor opined that Mother was a very good mother, and that she observed no behavioral or emotional problems with Son or Daughter. At the conclusion of the neighbor's testimony, the court again warned of time constraints, and the following exchange occurred:

THE COURT: Okay. By my count you guys are about equal on time. So, um, who's your next witness?

[MOTHER'S COUNSEL]: Okay. Next would be [another friend of Mother's].

THE COURT: Because we will end and make a decision by 4:30, so you have 32 minutes. That includes cross-examination.

Another friend of Mother's testified that he had known Mother for approximately nine years, and that he had also observed bruises on Mother's body.

Mother then testified on direct examination that she wanted sole physical and legal custody of Son and Daughter and had provided for the children in the best way she could. Mother feared she would have no relationship with Son and Daughter if Father gained sole custody of them. Mother testified that she had lived with Father in Texas but left with the children for Hawai'i in 2009 because he was physically and emotionally abusive. As Mother explained the children's schooling in Hawai'i, their daily routines, and weekend activities, the court interrupted and the following exchange between the court and Mother's counsel occurred:

THE COURT: Counsel, you have two minutes left.

[MOTHER'S COUNSEL]: Your Honor, I'm going to move for an extension of time. Um, the reason is—

THE COURT: Throughout—okay. Tell me why because I know that each and every step of this trial I told you it was going to be equal amount of time. We started at 4:04, and breaking down the remainder of time into 4:30, which the court said we would be done [sic], that split equally.

Now if he finishes his cross-examination early, then you have the balance of that time. But each and every of the other witnesses I said we're running on a time crunch. Um, you know, I gave you that opportunity. You still decided to call the other witnesses. So—

[MOTHER'S COUNSEL]: I understand.

THE COURT:—we're gonna—

[MOTHER'S COUNSEL]: I understand, Your Honor. But each witness was important, and that witness had something to say about domestic violence.

THE COURT: I understand. But you still—we still have the time constraints that we do have. You knew about them. So, as counsel, you were permitted to use time as you felt, uh, you needed to use them best. So I allowed you to do that. So continue. Use the rest of your time wisely.

[MOTHER'S COUNSEL]: Um, so what is—is the motion—you're not ruling at this time?

THE COURT: Well, I cannot go beyond 4:30.

(Emphasis added).

Mother testified that she did not intend to flee the country with her children. As Mother was testifying about how infrequently she had been able to speak to the children, the court again interrupted and ordered Mother's counsel to stop direct examination:

THE COURT: Okay, Counsel, you're over your time. You have one more question.

[MOTHER'S COUNSEL]: Um, is it sufficient being able to see your kids only on phone and on Skype? Is that enough for you?

THE WITNESS: Of course not.

[MOTHER'S COUNSEL]: Thank you.

THE COURT: That was your last question.

THE WITNESS: (Inaudible) never was part—

THE COURT: Okay. Hold on, ma'am.

Now—I mean we went—you had to 4:17 and were given three minutes to 4:20.

Counsel, cross-examination.

As Father's counsel was cross-examining Mother, the court interjected and told the parties that the testimony was over:

THE COURT: One last question.

[FATHER'S COUNSEL]: Thank you.

Um, [Mother], you've heard your ex tell this court all of the things he's done in Texas, all of the improvements the children have made, their living situation, the support network, the socialization network, the activities network. Please tell this judge what you heard that would require him to remove the children from [Father] and give them to you.

THE WITNESS: The difference is that (inaudible) the paper and which is I—

[FATHER'S COUNSEL]: I'm asking—

THE COURT: Okay. That's it.

[FATHER'S COUNSEL]:—what's happened in Texas—

THE COURT: Wait. Hold on. Testimony is over. [FATHER'S COUNSEL]: Thank you, Judge.

THE COURT: It's 4:30. Please have a seat, ma'am.

[MOTHER'S COUNSEL]: Your Honor—

THE COURT: Yes.

[MOTHER'S COUNSEL]:—again I would renew my motion for an extension of time. Three hours is not enough for this trial. This trial involves complex issues.

THE COURT: Why—why didn't—why wasn't that motion done prior to trial today? We brought somebody back from Texas. I've ordered the two children back here. This isn't like we have local people here where we can continue it, you know, in a week or two. It would be at his expense.

[FATHER'S COUNSEL]: Your Honor, it was enough for us.

THE COURT: So we—I mean this is something that if we were going to go and expand this for more than the time allotted today, that's why I kept on trying to tell you get—you know, to the—I wanted to hear about the two parents. I wanted to hear from dad. I wanted to hear from mom. I wanted to hear from the custody evaluator. Unfortunately the other three witnesses took up time that otherwise could have been allocated to mom.

But if there was some other situation, I may be inclined. But we have dad flying back here from Texas. I ordered the two children. They flew back from Texas. To have them come back another time because the allocation of time wasn't properly used would be unfair to especially the children. So with that—that being said, um, the request for an extension of trial time is—is denied.

During Mother's closing argument, Mother revisited the issue of Father's alleged domestic violence, and the following exchange occurred:

[MOTHER'S COUNSEL]: Further there is evidence in this case that father is abusive, that father was abusive to [Mother], to [Older Son], and he exposed the children to his anger and violence.

This is a concern that needs to be taken seriously. Mother is—

THE COURT: How was—how was that proven?

[MOTHER'S COUNSEL]: That was proven through the testimony of witnesses and through the interview.

THE COURT: What witnesses? 'Cause I don't have—my notes don't indicate any witness said that they either got a state-

ment from father or actually saw him physically abuse mother.

[MOTHER'S COUNSEL]: We had several witnesses who stated that they observed mother with bruises.

THE COURT: But they never said how she got them.

[MOTHER'S COUNSEL]: They were immediately after separating from father. The circumstantial evidence shows that those injuries were from father. She left father in an emotional state and then they saw her with the bruises right afterward.

[Older Son] is the best witness as to the abuse. He was there and his report is in the investigations reported.

THE COURT: Where is [Older Son] today to testify? He's old enough to testify.

[MOTHER'S COUNSEL]: [Older Son] is in Sweden. And that was not done.

Mother moved for a guardian ad litem to be appointed for the children, and there was further discussion about Father's alleged abuse and the amount of time allowed for trial:

[MOTHER'S COUNSEL]: Now if the court is not inclined to award custody to mother, I would suggest due to the complexity of this case that a GAL be appointed for these children. When the children are returned to Hawai'i, a GAL can meet with them.

They can sort through the issues. Because really we haven't heard from the kids. We haven't. Through this whole case we haven't heard from the kids. We haven't through this whole case we haven't heard from the kids. And that's an important issue.

Mother's willing to pay for half. Father makes three thousand dollars per month. If he could pay for half of this, I think it would be the best solution for determining the final outcome in this case.

THE COURT: Okay. And, Counsel, then with respect to that issue, father filed his petition August 10, 2011. Mother filed her petition August 26, 2011. We're close to the end of June 2011[sic], about ten months later. Why hasn't the request for

a GAL with respect to the children ever been made for the last ten months?

[MOTHER'S COUNSEL]: Due to the circumstances of this case, we did not know that father was going to take the children to Texas.

THE COURT: Okay. You guys knew as soon as December 2011. In fact it's almost June 25th. It's six months to the day you've known that father had children in Texas. We came here for a motion I believe in March. Uh, mom's motion was denied. Father's motion for temporary relocation pending trial was granted given the kids['] current therapy treatment.

But at that time there was no request for an extension of the trial date or to move it. There was no request to expand the amount of time to see if we could get multiple dates to have a trial. There was no request for a guardian ad litem to be appointed for the kids. All of those things I could have addressed and would have addressed had all of these issues been brought up instead of the day of trial. So—

[MOTHER'S COUNSEL]: But it is not too late, you know.

THE COURT: The trial is over.

[MOTHER'S COUNSEL]: But the request is being made now as part of my closing that a GAL be appointed.

THE COURT: An oral—an oral motion without a written motion is being made now?

[MOTHER'S COUNSEL]: That is correct. And it's based on the circumstances of what happened in this case. The request before—

THE COURT: What circumstances are you basing that on now that you didn't know three or six months ago?

[MOTHER'S COUNSEL]: Since the May 21st, two thousand—well, since the report came back that this custody investigation would not be conducted, an interview on the phone. So the report May 21, 2012.

THE COURT: Okay. So that's more than a month from now. Why didn't you put in a request for an ex-parte motion to

shorten time? That's more than four weeks. And then that way I wouldn't have had [Father] and the kids flown back here if we were going to push this trial off so that we can get all of this done. But I specifically ordered him at his own expense to fly the kids back.

The court awarded Father sole physical and legal custody of Son and Daughter, explaining that this is "a very complex case on which I have to make a decision based upon the best interests of the children. And right now the only evidence that I have before me is I have—although we have allegations, we have no convictions for any domestic abuse against father."

In the family court's November 30, 2012 Findings of Fact and Conclusions of Law, the family court found that Father and the court custody investigator were credible witnesses, but Mother was not. The family court further found that it was in Son's and Daughter's best interests to award to Father their sole physical and legal custody, with Mother having reasonable visitation. The family court also determined that Mother's oral motions during closing argument to extend the trial and to appoint a guardian ad litem were untimely and were therefore denied. The family court's decision was set forth in an August 23, 2012 Order Re: Custody, Visitation, and Support Orders After Voluntary Establishment of Paternity, awarding sole legal and physical custody of Son and Daughter to Father.

## C. ICA appeal

In her opening brief, Mother argued the family court erred in restricting the trial time of each party. Citing *Doe v. Doe*, 98 Hawai'i 144, 155, 156, 44 P.3d 1085, 1096, 1097 (2002), in which this court cautioned "that adherence to a time schedule must be tempered by the circumstances of the proceeding as it unfolds, since circumstances cannot always be accurately predicted ahead of time," Mother argued that "she could have described [Father's] 'extreme anger issues' and how he was 'excessively abusive to her, her older son and [Son]," if permitted to complete her testimony. Mother maintained that she had intended to call the Honolulu

Police Department detective who investigated Father's sexual abuse allegations against Mother's Older Son to testify regarding the lack of evidence to support Father's allegations.

Father filed, through counsel, a notice that he opposed all relief sought by Mother but would not be submitting an Answering Brief.

In a Summary Disposition Order, a majority of the ICA affirmed the family court's August 23, 2012 Order. Specifically, the ICA held that the family court did not err in limiting the time at trial and denying Mother's oral motion to extend trial. According to the ICA, *Doe* was distinguishable from the instant case on the following grounds:

In the case before us, Father testified but did not present any other witnesses, whereas in *Doe v. Doe*, the majority of the time was used in direct and cross-examination of the father's witnesses.

Also, in this case, when the family court warned Mother's counsel that time was running out, counsel did not question Mother regarding any alleged violence, but instead, asked about Son and Daughter's passports, whether Mother intended to remain in the country, and other questions unrelated to the issue of family violence.

The ICA then noted that Mother made no offer of proof and gave no specifics as to the type of testimony expected of Mother or remaining witnesses other than that they "had something to say about domestic violence." The majority contrasted this with the situation in *Doe*, where the mother asserted that remaining witnesses had direct personal knowledge of the father's abusive personality and submitted affidavits describing personal accounts of witnessing assaultive behavior. Finally, the ICA concluded that Mother's case was not harmed by her inability to call the detective to testify about the lack of evidence supporting Father's allegations that Older Son sexually abused Son and Daughter, as this testimony would be duplicative of information already in the custody investigation report.

In a dissenting opinion, Chief Judge Nakamura concluded that the question of custody was too important and the proper determina-

tion of the children's best interests too complex for the family court to inflexibly limit the time for trial. Noting that Father and Mother presented diametrically opposing claims and evidence regarding each other's fitness as a parent, Chief Judge Nakamura pointed out that the family court could only determine the best interests of Son and Daughter by resolving those conflicting claims and evidence, which turned on the family court's assessment of whether Father or Mother was more credible. Chief Judge Nakamura concluded that the family court could not properly determine the best interests of the children while cutting short Mother's case and precluding her from introducing additional evidence on her and Father's fitness as parents, and their history of family violence.

## II. Standard of Review

 A trial court has discretion to set reasonable time limits for trial. *Doe v. Doe,* 98 Hawai'i 144, 155, 44 P.3d 1085, 1096 (2002); Hawai'i Rules of Evidence (HRE) Rule 611 (1993). Accordingly, limitations on the time set for trial are reviewed for abuse of discretion. A court abuses its discretion if it "clearly exceed[s] the bounds of reason or disregard[s] rules or principles of law or practice to the substantial detriment of a party litigant." *Amfac, Inc. v. Waikiki Beachcomber Inv. Co.,* 74 Haw. 85, 114, 839 P.2d 10, 26 (1992).

## III. Discussion

 Mother argues that the family court erred in limiting the time for testimony and thereby excluding testimony bearing on the best interests of Son and Daughter. Mother acknowledges that the family court had authority and discretion to set a reasonable time limit for trial, but argues that such authority must be tempered with due regard for the rights of litigants and the best interests of children. For the reasons set forth below, we conclude the family court abused its discretion in limiting the time for trial to three hours.

Our decision in *Doe v. Doe* is highly instructive. In *Doe,* the family court set a half-day evidentiary hearing on a mother's and father's competing custody motions. 98 Hawai'i at 146, 44 P.3d at 1087. Proceeding first, the father and all of his witnesses were able to testify. *Id.* at 147, 44 P.3d at 1088. Though the mother was able to testify regarding alleged abusive behavior by the father, when she tried to call her next witness, the family court interrupted her and stated, "I think your time is up," then concluded the proceedings. *Id.* Mother did not object. *Id.* at 147, 154, 44 P.3d at 1088, 1095. The family court later granted the father's custody motion while denying the mother's motion, thereby confirming sole legal and physical custody of the child to the father, with visitation rights to the mother. *Id.* at 148, 44 P.3d at 1089. The mother thereafter filed a motion for new trial, reconsideration, and/or relief from judgment, seeking an opportunity to present her witnesses' testimonies to the court, which the family court denied. *Id.*

On appeal, this court acknowledged that "the court had the authority to set a reasonable time limit for trials and hearings." *Id.* at 154, 44 P.3d at 1096. However, this court also noted that the family court's denial of the motion for new trial "resulted in the exclusion of testimony of witnesses bearing upon the issue of family violence and, inferentially, the best interest of [the c]hild." *Id.* More specifically, this court noted that the mother had submitted affidavits indicating that her witnesses would have testified about the father's alleged abuse of the mother and its effect on the child. *Id.* at 156, 44 P.3d at 1097. Concluding that "[e]vidence supporting such allegations was pertinent to whether Father should have sole legal and physical custody of [the c]hild[,]" this court vacated in part the family court's ruling, and remanded for further proceedings on the mother's alternative custody motion. *Id.* at 158, 44 P.3d at 1099. Notably, this court cautioned the family court that "adherence to a time schedule must be tempered by the circumstances of the proceeding as it unfolds, since such circumstances cannot always be accurately predicted ahead of time." *Id.* at 156, 44 P.3d at 1097.

Here, as in *Doe,* the half-day limitation on the time for trial was set well in advance. The excluded testimony related to alleged

abuse and had a direct bearing on the best interest of the child. *See id.* at 154–55, 44 P.3d at 1096–97. Nevertheless, the ICA concluded that *Doe* is "unlike the instant case" for four reasons: (1) in *Doe*, the majority of trial time was used in direct and cross-examination of the father's witnesses, whereas here, Father did not present any other witnesses; (2) here, Mother's counsel was advised that time was running out, but did not question Mother regarding any alleged violence; (3) Mother bore the burden to overcome the rebuttable presumption that Son and Daughter should not be placed in her custody; and (4) Mother's counsel provided no offer of proof regarding the further testimony that would be provided by Mother or her remaining witnesses.

 None of these factual distinctions override the critical similarity between *Doe* and the instant case: that "the family court's ruling resulted in the exclusion of testimony of witnesses bearing upon the issue of family violence and, inferentially, the best interests of [the children]." *Doe*, 98 Hawai'i at 154, 44 P.3d at 1096. As this court has long held, in child custody cases, "a guiding principle for family courts in awarding custody under Hawai'i law is the best interest of the child." HRS § 571–46 (Supp.2011); *Doe*, 98 Hawai'i at 155, 44 P.3d at 1096. "Thus, in custody proceedings, 'the <u>paramount</u> consideration ... is the best interests of the child.'" *Doe*, 98 Hawai'i at 156, 44 P.3d at 1097 (emphasis added) (quoting *In re Doe*, 52 Haw. 448, 453, 478 P.2d 844, 847 (1970)); *see also Fujikane v. Fujikane*, 61 Haw. 352, 354, 604 P.2d 43, 45 (1979) ("The critical question to be resolved in any custody proceeding is what action will be in the best interests of the child." (citation omitted)); *Yee v. Yee*, 48 Haw. 439, 441, 404 P.2d 370, 372 (1965) ("In any custody proceeding, the welfare of the minor children is of paramount consideration." (citation omitted)); *Dacoscos v. Dacoscos*, 38 Haw. 265 (Haw.Terr.1948) (stating that, in custody cases, the "general rule [is]

that the welfare of the child has paramount consideration"). Here, as in *Doe*, the main issue is whether the excluded testimony was pertinent to the bests interests of the children.

The similarity between the instant case and *Doe* with respect to this critical issue supersedes differences between the two cases regarding other important issues, such as whether one party called more witnesses than the other or had more time to present its case. Moreover, Mother's decision to question witnesses about matters other than Father's alleged domestic violence does not render *Doe* inapplicable to the instant case. As discussed *infra*, Mother was able to elicit testimony that addressed the best interests of the child. The ICA also sought to distinguish this case from *Doe* on the basis that Mother, unlike the mother in *Doe*, had to overcome the rebuttable presumption that the children should not be placed in her custody. This distinction also does not render *Doe* inapplicable. *Doe's* holding does not depend on the existence or allocation of a rebuttable presumption against custody, nor do we find any principled reason to so hold. Finally, the ICA sought to distinguish this case from *Doe* by pointing out that the mother in *Doe* asserted that her remaining witnesses had direct personal knowledge of the father's abusive behavior, while no specific offer of proof had been made regarding remaining witnesses in the instant case. But here, Mother herself was one of the remaining witnesses. She would have had personal knowledge of the domestic violence allegedly committed against her by Father, and had said so in statements included in the CIU report and briefly on the witness stand before the court prematurely stopped her testimony.[2] No offer of proof was thus necessary in the instant case to indicate to the family court that Mother had personal knowledge of Father's alleged assaultive behavior. In short, *Doe* is applicable here despite the factual distinctions noted by the ICA.

---

2. Additionally, to the extent the ICA suggested that further testimony on domestic violence would be duplicative of the CIU report, it should be noted that the family court's assessment of the domestic violence issue depended on the credibility of Mother and Father, which would be

difficult to determine absent Mother's testimony on this issue. Also, as the family court acknowledged in court, no direct evidence of family violence by Father was introduced by testimony from other witnesses, and Mother presumably could have provided such testimony.

Similar to this court in *Doe*, other state courts have held that judges must be cautious in imposing time limits in family law cases involving the custody of children:

> The public and private interests in cases involving the custody and care of children are enormous. There are few other matters which exceed the interests of a spouse pursuing a claim for custody or primary care of a child. Furthermore, the public has an abiding interest in the future of its children, and the State, by implication, is a quasi-party to each dissolution action....
>
> ... Justice cannot always be achieved within the orderly environment of an assembly line. The importance of evidence is often not understood until all the evidence is heard. Thus, judges must not sacrifice their primary goal of justice by rigidly adhering to time limits in the name of efficiency.

*In re Marriage of Ihle,* 577 N.W.2d 64, 67–68 (Iowa App.1998) (citations omitted); *see also In re Marriage of Finer,* 893 P.2d 1381 (Colo.App.1995) (holding that litigants are entitled to have sufficient time to make an orderly presentation of their case, regardless of overcrowded dockets and a trial court's obligation to move matters before it as rapidly as possible).

Federal courts have similarly held that time limits on witness testimony must be informed and justified, and sufficiently flexible to ensure a fair trial. The Court of Appeals for the Ninth Circuit has noted that, "Although district courts have discretion to impose rules to expedite completion of trials, we caution that they must not adhere so rigidly to time limits as to sacrifice justice in the name of efficiency." *Gen. Signal Corp. v. MCI Telecomms. Corp.,* 66 F.3d 1500, 1509 (9th Cir.1995). The Court of Appeals for the Third Circuit has held that "a district court should impose time limits only when necessary, after making an informed analysis based on a review of the parties' proposed witness lists and proffered testimony, as well as their estimates of trial time." *Duquesne Light Co. v. Westinghouse Elec. Corp.,* 66 F.3d 604, 610 (3d Cir.1995).

Here, the family court's rigid time limits do not appear to reflect an informed analysis of the time necessary to afford each party a full and fair opportunity to present their case. The family court decided on February 13, 2012 that time for trial would be half a day, starting at 1:30 p.m. Thus, the court limited the time for trial more than four months before Mother and Father submitted their respective witness lists on June 15 and June 18, 2012. The record reflects that the family court set the time limit after a conference with the parties' counsel regarding the return of the CIU report, but contains no clear indication that the court made an informed decision on trial time after consulting with the parties, or that the parties agreed to the time limit.

In addition, pursuant to *Doe*, the family court was required to consider the "circumstances of the proceeding as it unfold[ed]," *id.* at 156, 44 P.3d at 1097, in determining whether Mother had sufficient time to present her case. Instead, the family court adhered to the time schedule imposed long before trial began or the number of expected witnesses was established, and did so even after it became apparent that Mother would be unable to fully present her case. While Mother did not object to the three-hour time limit prior to trial, or move for more time prior to the court's warnings that her limited time was running out, neither did the mother in *Doe. See* 98 Hawai'i at 147, 44 P.3d at 1089. Furthermore, the family court here should have reasonably foreseen that three hours might not be enough time to conclude a trial that the court readily conceded was "a very complex case on which I have to make a decision based upon the best interests of the children." *Doe* states that "if counsel believe that relevant evidence must be heard after the time set for the hearing has expired, they must move for an extension of time." *Id.,* at 154, 44 P.3d at 1095. In the instant case, Mother orally moved for an extension of time but the court denied the motion.

Indeed, the family court's reasons for prematurely ending the testimony were not justified under the circumstances of this case. First, the family court explained its decision to halt testimony and deny Mother's motion to extend time by saying that Mother had been warned of time constraints and chose to

call other witnesses. However, to the extent the family court made this determination based on its belief that Mother wasted time on unnecessary witnesses, we disagree. Each witness provided relevant testimony on two critical issues: (1) Mother's ability to care for Son and Daughter, and (2) Father's alleged physical abuse of Mother. Indeed, the family court had noted that it wanted to hear testimony on how Mother cared for Son and Daughter.

The testimony on Mother's ability to provide appropriate care and Father's alleged history of domestic violence and false allegations bears directly on the paramount consideration in the custody proceedings, i.e., the best interests of Son and Daughter. For example, pursuant to HRS § 571–46(a)(9), the protective order awarded to Father against Mother on December 9, 2011, after a finding that there was past domestic abuse and a threat of harm to Father from Mother created "a rebuttable presumption that it is detrimental to the child and not in the best interest of the child to be placed in sole custody, joint legal custody, or joint physical custody with [Mother]." Moreover, Father testified that he sought treatment for Son and Daughter after they told him that Older Son and one or more of Older Son's friends had physically and sexually abused them, and that Father referred the matter to the police for investigation. Father had also alleged that Mother physically abused Father, and had obtained a protective order against Mother.

Given the presumption created by HRS § 571–46(a)(9), that custody should not go to Mother, Mother had to demonstrate she posed no threat to Son and Daughter, and that placing them in her care and custody would not be detrimental to their best interests. In this regard, Mother's questioning of the court custody investigator was necessary because it elicited testimony to discredit Father's allegations of abuse. As the investigator testified, Father's former wife related that Father had similarly accused her of abuse after their relationship ended.

Mother's witnesses also provided corroboration of her own allegations that Father had physically abused her, which likewise bore directly on the issue of the children's best interests. After all, Father's protective order did not negate the domestic violence allegations by Mother and Older Son against Father, or the reasonable inferences that could be drawn from the testimony of Mother's witnesses who described her bruises following disputes with Father. Further, Mother's questioning of the court custody investigator elicited testimony on how Father had physically abused his former wife, who was afraid that Father would retaliate against her for her participation in the instant case.

Additionally, Mother used her trial time to establish that the CIU report was flawed, and its recommendations suspect, because the investigator had not observed Father's interactions with Son and Daughter or verified their living conditions in Texas before recommending that Father have sole physical and legal custody of Son and Daughter. As the investigator admitted, a home visit is one of the most important steps in a custody investigation, but one was never done here. The investigator also acknowledged that she had not interviewed the children and thus had "no idea how the children are doing in Texas[.]" In short, Mother's witnesses offered relevant testimony on issues essential for the trial court to consider before making its custody determination.

Second, the family court justified its decision to not schedule further proceedings out of concern that requiring Father, Son, and Daughter to return to Hawai'i from Texas would pose a hardship to them. Nevertheless, that hardship must be balanced with Mother's right to have a fair and reasonable opportunity to present her case, especially when the custody and future of two of her children were at stake. After Mother moved for an extension of time and briefly explained why previous witnesses had been necessary, the court responded, "Well, I cannot go beyond 4:30." Mother later renewed the motion to extend time, stating that "[t]hree hours is not enough for this trial. This trial involves complex issues." The court stated that Mother had chosen to call witnesses who took up time that could have been allocated to Mother, and that Father and the children

had come from Texas for the trial. The court denied the motion for more time and stated that, "To have them come back another time because the allocation of time wasn't properly used would be unfair to especially the children." The family court further indicated that "if there was some other situation, I may be inclined [to grant an extension of time]," but that it was not willing to do so in the instant case because the court had ordered Father, Son, and Daughter to fly to Hawai'i from Texas for the proceedings. There is no indication that the family court considered any other options, such as requiring Mother to pay a portion of Father's travel expenses, rather than rigidly enforcing its time limit, despite its clear recognition that this case was complex. Nor is there any indication on the record that Father objected to the prospect of returning for additional proceedings.

■ Important constitutional interests provide additional reason for providing parents a full and fair opportunity to present their case in custody decisions. Indeed, a parent's right to the "care, custody and con-

trol" of his or her child is a fundamental liberty interest protected by the United States Constitution. *Troxel v. Granville*, 530 U.S. 57, 65, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000) ("[T]he interest of parents in the care, custody, and control of their children is perhaps the oldest of the fundamental liberty interests recognized by this Court."). This court has also recognized that independent of the United States Constitution "parents have a substantive liberty interest in the care, custody, and control of their children protected by the due process clause of article 1, section 5 of the Hawai'i Constitution.[3] Parental rights guaranteed under the Hawai'i Constitution would mean little if parents were deprived of the custody of their children without a fair hearing." [4] *In re Doe*, 99 Hawai'i 522, 533, 57 P.3d 447, 458 (2002).

Given the important constitutional interests and the factual circumstances of this case, the court's enforcement of its time limit was not reasonable. As Mother notes in her application, additional time for testimony would have allowed her to describe Father's "extreme anger issues" and abuse of her and

3. Article 1, section 5 of the Hawai'i Constitution provides that "[n]o person shall be deprived of life, liberty or property without due process of law, nor be denied the equal protection of the laws, nor be denied the enjoyment of the person's civil rights or be discriminated against in the exercise thereof because of race, religion, sex or ancestry."

4. The Concurring Opinion proposes a bright-line rule under which any time limits in child custody cases involving allegations of domestic violence would be unconstitutional. Concurring Opinion (Concur. Op. at 249–50, 339 P.3d at 747–48) Respectfully, it does not appear that any other court has adopted, or even considered, the bright-line rule proposed by the Concurring Opinion. In fact, an overwhelming number of jurisdictions have recognized that trial courts have the discretion to set reasonable time limits in child custody cases, but that discretion must be balanced against a party's due process rights to a fair and reasonable opportunity to be heard. *See, e.g., In re Marriage of Ihle*, 577 N.W.2d at 67 (holding that it is within the discretion of the trial court to apply limits to the length of trial, provided the decision comports with due process considerations); *In re ARF*, 307 P.3d 852 (Wyo. 2013) (trial court's decision to limit paternity action, in which father sought child custody and support, to a one-day trial in which parties would be afforded 160 minutes to present their

case did not violate father's due process right to a meaningful hearing); *Goodwin v. Goodwin*, 618 So.2d 579 (La.Ct.App.1993) ("The due process clauses of the Louisiana Constitution and the Fourteenth Amendment to the United States Constitution guarantee[] litigants a right to a fair hearing. However, 'due process' does not mean litigants are entitled to an unlimited amount of the court's time."); *Young v. Pitts*, 335 S.W.3d 47, 60 (Mo.Ct.App.2011) (in case involving allegations of sexual abuse, court held that "time limitations placed on presentation of evidence are matters within the motion court's discretion and will only be reversed for an abuse of that discretion"); *Moore v. Moore*, 757 So.2d 1043, 1046 (Miss.Ct.App.2000) (in case involving allegations of domestic violence, court held father's due process rights were not violated by trial court's time limitations); *Wolgin v. Wolgin*, 217 N.C.App. 278, 719 S.E.2d 196, 199 (2011); *Varnum v. Varnum*, 155 Vt. 376, 586 A.2d 1107, 1115 (1990) (in case involving allegations of domestic violence, court held father's due process rights were not violated by trial court's time limitations); *cf. Hicks v. Commonwealth*, 805 S.W.2d 144, 151 (Ky.Ct.App.1990) ("A trial court clearly has the power to impose reasonable time limits on the trial of both civil and criminal cases in the exercise of its reasonable discretion. As long as these trial time limits are not arbitrary or unreasonable we will not disturb the court's decision on review." (citation omitted)).

Older Son, including more than 50 alleged incidents of domestic violence, some of which included choking, suffocation, punching, slapping, "body slamming," and rape. Additional time would also have allowed Mother to rebut Father's accusations that she abused Son and Daughter, and that Older Son sexually abused Son and Daughter. Mother further asserts that additional time would have allowed the police detective to testify regarding the lack of evidence to support Father's allegations that Older Son abused Son and Daughter.

Finally, we note that Mother and Father presented diametrically opposing evidence with regard to each other's fitness as a parent. Both Father and Mother raised claims of abuse by the other, but none of the custody evaluators or medical practitioners involved in this case were able to resolve these claims. Father testified at some length regarding the children's schooling, extracurricular activities, and the therapy they received for having been abused. However, because Father moved the children to Texas, the state custody evaluators were never able to speak with children or evaluate their living situation or behavior with Father. Father also did not provide any corroborating evidence with regard to the children's welfare in his care. While such corroboration is not necessary for a court to determine the best interests of a child, the absence of any corroboration in this case highlights the fact that the family court's determination hinged on the credibility of Mother and Father.

In order for the court to determine the best interests of the children, it needed to properly consider the competing evidence on each party's fitness as a parent. Excluding further witness testimony on behalf of Mother prevented the family court from considering relevant evidence. In other words, by cutting short Mother's testimony, the family court curtailed its own opportunity to fairly judge Mother's credibility and properly decide how the best interests of Son and Daughter could be served. Under these circumstances, the three-hour time limit unreasonably deprived Mother of a fair opportunity to present her case and prevented the family court from being able to determine the best interests of the children in this case.

■ Although the family court can set reasonable time limits to a trial in a child custody case involving allegations of domestic violence, the time limits must be based upon an informed analysis of the time necessary to afford the parties a full and fair opportunity to present their case. And when a party moves for an extension of time in such cases, the family court must consider whether the proposed testimony is pertinent to the best interests of the child when deciding whether or not to grant the motion. By adhering to a rigid time limit, cutting short Mother's testimony and denying Mother's motion to extend trial time for testimony regarding issues of family violence and their bearing on the best interests of Son and Daughter, the family court abused its discretion and " 'disregarded rules or principles of law or practice to the substantial detriment of a party litigant[,] ... and its decision ... clearly exceeded the bounds of reason." [5] *Doe*, at 156, 44 P.3d at 1097.

5. The Concurring Opinion also concludes the Hawaiʻi Rules of Evidence (HRE) and the Hawaiʻi Family Court Rules (HFCR) do not permit the family court to impose reasonable time limits.

The Concurring Opinion states that the use of time limits is not provided for by the Hawaiʻi Rules of Evidence (HRE), citing in particular to HRE Rule 611 and *Weinstein's Federal Evidence* to maintain that HRE and the Federal Rules of Evidence (FRE) Rule 611 "do[ ] not empower the court to use those restrictions to limit non-cumulative, probative evidence." Concur. Op. at 238–39, 339 P.3d at 736–37 (citing 4 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 611.02[2][b][ii] (2d ed.2014)). Weinstein explains in regard to Rule 611 that "Time limits on the presentation of evidence may be imposed to avoid wasting time and to ensure that a case is speedily and efficiently heard," so long as the trial court does not abuse its discretion by "exclud[ing] non-cumulative, probative evidence because its introduction would take longer than the court had set aside for trial." 4 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 611.02[2][b][ii] (2d ed.2014). In fact, the Vermont Supreme Court has read Vermont's equivalent of Rule 611 as granting trial courts the ability to set reasonable time limits on the presentation of evidence at trial. *See Varnum v. Varnum*, 155 Vt. 376, 586 A.2d 1107, 1115 (1990) ("We think that the power granted by Rule 611(a) includes the authority to set reasonable limits on the consumption of time

## IV. Conclusion

We hold that the family court abused its discretion in denying Mother's motion for additional trial time. Thus, we vacate the ICA's August 27, 2013 judgment and the family court's August 23, 2012 order, and remand to the family court for further proceedings.

## Concurring Opinion by POLLACK, J.

Few cases come before our courts with more important and long-lasting repercussions than child custody cases involving allegations of physical violence by a parent. A court's decision determining custody of the child has an incalculable effect on the future life of the family. The fact that the children in a custody case do not have standing to be parties to the litigation increases the importance of the role of the family court in such cases. The children's lack of standing is compensated by requiring that the custody determination be decided in the child's "best interests." Hawai'i Revised Statutes (HRS) § 571–46(a)(1) (2011). When the court has determined that abuse has been committed by a parent, the law mandates "a rebuttable presumption that it is detrimental to the child and not in the best interest of the child to be placed in sole custody, joint legal custody, or joint physical custody with the perpetrator of family violence." HRS § 571–46(a)(9).

Arbitrary time limits set before trial undermine the integrity of the trial proceedings through which a court must determine the best interests of the child. Particularly when the matter involves allegations of physical violence, time limits on the presentation of evidence create an unacceptable risk that an incomplete record will be presented to the court, compromising the evaluation of parental fitness. Without a complete record, a court cannot make an informed judgment in compliance with the statutory mandates of HRS § 571–46(a) that the best interests of a child are determinative.

## I. Background

In the trial of this case to determine the custody of two children, Father and Mother each accused the other of domestic violence. Both alleged the other was not fit as a parent, and each sought sole custody of the children. The evidence at trial regarding the abuse consisted of testimony by Father, Mother, and witnesses called by Mother to support her contentions of physical violence by Father. A Custody Investigation Unit (CIU) report also contained allegations of domestic violence by both parties against the other, as well as reports from Father of abuse by Mother's eldest son from a previous relationship. The CIU report did not contain important information that would typically be gained from home visits and interviews with the children, as Father im-

---

in examining witnesses. We agree with the observation of the Maine Supreme Judicial Court that counsel left to their own devices may 'proceed at a pedestrian pace unsuited to times when court calendars are crowded and the costs of litigation to the parties and to the taxpayer are unreasonably high.' " (citations omitted)).

The Concurring Opinion also concludes that the Hawai'i Family Court Rules (HFCR) implicitly disallow the use of time limits, when those rules are compared to the Hawai'i Rules of Civil Procedure (HRCP), and in particular, HRCP Rule 16, which authorizes the court to establish time limits. Concur. Op. at 240–41, 339 P.3d at 738–39. Although HFCR Rule 16 does not include an express provision regarding time limits, the absence of a specific provision should not be read to preclude the family court from setting reasonable time limits under certain circumstances. HFCR Rule 16 in fact omits other paragraphs in HRCP Rule 16 that refer to powers that clearly are not denied by implication based on their exclusion from HFCR Rule 16 (e.g.,

HRCP Rule 16(c)(11) allows the court to take appropriate action with respect to "the disposition of pending motions."). Moreover, HFCR Rule 16 has a catch-all provision that authorizes the family court to take appropriate action with respect to "(7) Such other matters as may aid in the disposition of the action." The catchall provision grants the family court the necessary flexibility to do what is appropriate in each case, which may include setting reasonable time limits in certain situations.

Indeed, the Rules Committee, when it proposed the amendments to HFCR Rule 16, and this Court, when it adopted the rule, were likely aware of the fact that family court judges could impose reasonable time limits on child custody proceedings. If the Committee or this Court intended to disallow the use of reasonable time limits, HFCR Rule 16 could have clearly said so. In the absence of express language precluding the family court's use of reasonable time limits, we decline to read such a prohibition into HFCR Rule 16.

properly removed the couple's children outside of Hawai'i.[1]

Despite the serious allegations of abuse, the family court imposed a strict three-hour limitation on the June 25, 2012 trial, four months prior to trial and well in advance of the parties' exchange of their respective witness lists. The record does not reflect a rationale for imposing the limitation, nor whether the parties had an opportunity to voice concerns regarding the time limit.[2]

During the three-hour bench trial, the court repeatedly reminded the parties of the time limit: "According to my recordkeeping, you've used 25 minutes. And ... dad has used approximately 50 minutes." "We're going to finish this case at 4:30 today, so, Counsel, use your time wisely. Because if we don't get to an opportunity to hear from your client, that will be based upon your choice." "Okay. By my count you guys are about equal on time.... Because we will end and make a decision by 4:30, so you have 32 minutes. That includes cross-examination."

During the direct examination of Mother, the court informed her counsel, "you have two minutes left." Counsel moved for an extension of time and the following exchange took place:

COUNSEL: Your Honor, I'm going to move for an extension of time. Um, the reason is—

COURT: Throughout—okay. Tell me why because I know that each and every step of this trial I told you it was going to be equal amount of time. We started at 4:04, and breaking down the remainder of time into 4:30, which the court said we would be done, that split equally. Now if he finishes his cross-examination early, then you have the balance of that time. But each and every of the other

witnesses I said we're running on a time crunch. Um, you know, I gave you that opportunity. You still decided to call the other witnesses....

COUNSEL: I understand.

COURT:—we're gonna—

COUNSEL: I understand, Your Honor. But each witness was important, and that witness has something to say about domestic violence.[3]

COURT: I understand. But you still,—we still have the time constraints that we do have. You knew about them. So, as counsel, you were permitted to use time as you felt, uh, you needed to use them best. So I allowed you to do that. So continue. Use the rest of your time wisely.

COUNSEL: Um, so what is—is the motion—you're not ruling at this time?

COURT: Well, I cannot go beyond 4:30.

(Emphases and footnote added). Later, the court halted Mother's direct examination.

COURT: Okay, Counsel, you're over your time. You have one more question.

... [Counsel asked one more question]

...

COURT: That was your last question.

...

COURT: Okay. Hold on, ma'am. Now—I mean we went—you had to 4:17 and were given three minutes to 4:20.

Mother's motion to extend time was later renewed and was again denied.

COURT: Okay, that's it.

...

COURT: Wait. Hold on. Testimony is over.

...

---

1. The family court subsequently approved the Father's motion to allow the children to remain out-of-state.

2. The time limit for trial is noted on a document entitled "CIU Report Return," that also ordered "Father to return minor children to Hawai'i within 30 days, unless an order allowing relocation pending trial is granted," and provided Skype and phone visitation rights for Mother. The document was signed by both parties' attorneys as to form and content.

3. It is unclear whether this grammatically awkward sentence is a defense of the testimony already provided, or an offer of proof supporting the extension of time. The majority seems to conclude that it is the former; the ICA concluded the latter. Majority at 231, 339 P.3d at 729; *AC v. AC and Child Support Enforcement Agency*, No. CAAP–12–0000808, 2013 WL 3927738 at *6 (App. July 30, 2013) (SDO).

COURT: It's 4:30. Please have a seat, ma'am.

COUNSEL: Your Honor—

COURT: Yes.

COUNSEL:—again I would renew my motion for an extension of time. <u>Three hours is not enough for this trial</u>. <u>This trial involved complex issues</u>.

. . .

COURT: Why—why didn't—why wasn't that motion done prior to today? . . .

. . .

COURT: So we—I mean this is something that is we were going to go and expand this for more than the time allotted today, that's why I kept on trying to tell you get—you know, to the—<u>I wanted to hear about the two parents</u>. I wanted to hear from dad. I wanted to hear from mom. I wanted to hear from the custody evaluator. <u>Unfortunately the other three witnesses took up time that otherwise could have been allocated to mom</u>.

(Emphases added).

Mother was prevented from completing her testimony and from calling additional witnesses. Reflective of the time limitations that had been imposed, the transcript of Father's direct examination is 51 pages. In contrast, the transcript of Mother's direct examination is 14 pages, which included her unsuccessful request for additional time. Consequently, Father's direct examination was approximately four times as long as Mother's.

Immediately following closing arguments, despite acknowledging that the case was "very complex" and the court-imposed time limits had prevented the court from hearing additional evidence that it "wanted to hear," the court awarded full physical and legal custody of both children to Father.

## II. Discussion

The paramount consideration in a custody case is "the best interests of the child." HRS § 571–46(a)(1). While courts generally have "inherent power to control the litigation process before them," *Richardson v. Sport Shinko (Waikiki Corp.)*, 76 Hawai'i 494, 507, 880 P.2d 169, 182 (1994), the trial court's "discretion is not unlimited . . . and must be balanced against the rights of the parties to present their cases on the merits." *Doe v. Doe*, 98 Hawai'i 144, 155 n. 12, 44 P.3d 1085, 1096 n. 12 (2002) (hereinafter *Doe* ).

In the context of the court's authority to control litigation versus the rights of the parties to present their cases, this concurrence initially examines the constitutional underpinning of a parent's right to custody of their children. Next, the legal basis for imposing time limitations at trial is addressed, and assuming a court has such authority, the requisite procedures for setting a time restriction are considered. The factors that a court may properly review when an extension of that time limit is requested during trial are then discussed. Finally, the advantages of time restrictions are weighed against their resultant risks.

### A.

"[T]he interest of parents in the . . . custody . . . of their children [ ] is perhaps the oldest of the fundamental liberty interests recognized by this Court." *Troxel v. Granville*, 530 U.S. 57, 65, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000). This fundamental liberty interest in custody is "guaranteed . . . by the Fourteenth Amendment." *Meyer v. Nebraska*, 262 U.S. 390, 399, 43 S.Ct. 625, 67 L.Ed. 1042 (1923); *see also Prince v. Massachusetts*, 321 U.S. 158, 166, 64 S.Ct. 438, 88 L.Ed. 645 (1944). "[I]ndependent of the federal constitution, . . . parents have a substantive liberty interest in the care, custody, and control of their children protected by the due process clause of article 1, section 5 of the Hawai'i Constitution." *In re Doe*, 99 Hawai'i 522, 533, 57 P.3d 447, 458 (2002); *accord In re T.M.*, 131 Hawai'i 419, 421, 319 P.3d 338, 340 (2014); *see also Doe v. Doe*, 116 Hawai'i 323, 334, 172 P.3d 1067, 1078 (2007).

A parent's fundamental interest in the custody of their children is inextricable from the fundamental right to due process because parental custody rights "would mean little if parents were deprived of the custody of their children without a fair hearing." *In re Doe*, 99 Hawai'i at 533, 57 P.3d at 458. "[T]he state may not deprive a person of his or her

liberty interest [in child custody] without providing a fair procedure for the deprivation." *In re T.M.*, 131 Hawai'i at 434, 319 P.3d at 353.

A fair procedure includes, at a minimum, the right to present probative evidence. It is well established that the "fundamental requis[i]te of due process of law is the opportunity to be heard." *Grannis v. Ordean*, 234 U.S. 385, 394, 34 S.Ct. 779, 58 L.Ed. 1363 (1914). The opportunity to be heard includes the opportunity to present testimony and other evidence.

"As a general rule, evidence may not be excluded solely to avoid delay." *Gen. Signal Corp. v. MCI Telecomms. Corp.*, 66 F.3d 1500, 1509 (9th Cir.1995). Exclusion of evidence is limited by the evidence's probative value: "If the evidence is crucial, the judge would abuse his [or her] discretion in excluding it." *Sec'y of Labor v. DeSisto*, 929 F.2d 789, 794–95 (1st Cir.1991); *see also Johnson v. Ashby*, 808 F.2d 676, 678 (8th Cir.1987) (holding that "it may be an abuse of the trial court's discretion to exclude probative, noncumulative evidence simply because its introduction will cause delay[.]").

In regards to the time limits that are the focus of this case, "arbitrary, inflexible time limits can impose a serious threat to due process principles. Justice cannot always be achieved within the orderly environment of an assembly line." *In re Marriage of Ihle*, 577 N.W.2d 64, 68 (Iowa Ct.App.1998). Therefore, "arbitrary, inflexible time limits are disfavored. They will, in many instances, support a finding of abuse of discretion, and require a new trial." *Id.* A court should "not adhere so rigidly to time limits as to sacrifice justice in the name of efficiency." *Gen. Signal Corp.*, 66 F.3d at 1509.

In deference to the intertwined fundamental liberty interests in child custody and due process, judicial discretion should be constrained "by due process principles requiring all litigants in the judicial process to be given a fair opportunity to have their disputes resolved in a meaningful manner." *Ihle*, 577 N.W.2d at 67. Therefore, time limits in child custody trials that prevent a party from presenting admissible probative evidence to the court for consideration is an unacceptable encroachment on a party's fundamental right to procedural due process.

## B.

The majority asserts that "a trial court has discretion to set reasonable time limits for trial," citing to *Doe* as authority and, generally, the Hawai'i Rules of Evidence (HRE) Rule 611 (1993). Majority at 229, 339 P.3d at 727.

### 1.

The rules of evidence authorize a court to control the pace of trial but do not expressly authorize time limits <u>prior</u> to trial.[4] HRE Rule 611 states, in relevant part:

> Control by court. The court shall exercise reasonable control over the <u>mode and order</u> of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment.[5]

HRE Rule 611(a) (1984) (emphasis and footnote added). The plain language of HRE Rule 611(a) suggests that the rule "does not provide an independent ground for excluding otherwise admissible evidence. The rule only empowers the district court to control the mode and order of presenting evidence." 4 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 611.02[2][a][i] (Joseph M. McLaughlin, ed., 2d ed. 2014). Thus, while "[t]ime limits on the presentation of evidence may be imposed to avoid wasting time and to ensure that a case is speedily and efficiently heard," HRE Rule 611 does not empower the court to use

---

**4.** The rules of evidence apply to all courts of the State of Hawai'i, except as provided. HRE Rule 1101(a) (1980); *Doe*, 98 Hawai'i at 155 n. 11, 44 P.3d at 1085 n. 11. The HRE are inapplicable to specified proceedings that are not relevant here. *See* HRE Rule 1101(d).

**5.** Mode means "[a] manner of behaving, living, or doing something[.]" *Black's Law Dictionary* 1156 (10th ed. 2014).

those restrictions to limit non-cumulative, probative evidence. *Id.* at § 611.02[2][b][ii].

The plain language of HRE Rule 611(a) indicates that the rule is focused upon the management by the court of the ongoing proceedings before it: "The court should exercise reasonable control over the mode and order of <u>examining</u> witnesses and <u>presenting</u> evidence...." (Emphasis added). The Commentary to HRE Rule 611 indicates that the rule is identical to Federal Rules of Evidence (FRE) 611.[6] HRE Rule 611 Commentary. The Advisory Committee Notes states that FRE 611(a)

> covers such concerns as whether testimony shall be in the form of a free narrative or responses to specific questions, McCormick § 5, the order of calling witnesses and presenting evidence, 6 Wigmore § 1867, the use of demonstrative evidence, McCormick § 179, and <u>the many other questions arising during the course of a trial</u> which can be solved only by the judge's common sense and <u>fairness in view of the particular circumstances</u>.

FRE 611, Advisory Committee Notes (1972 Proposed Rules) (emphases added). Thus, HRE Rule 611 authorizes the court to control the litigation during trial, but provides no express authorization for a broad exercise of control prior to trial.

HRE Rule 403 (1993) authorizes the exclusion of evidence to advance the policies described in HRE Rule 611. However, HRE Rule 403 confers the power to exclude relevant evidence based on a balancing test: "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." *Id.* This balancing test is incompatible with a policy of setting of time limits prior to trials, which by its very nature would bypass the deliberate evaluation prescribed by HRE Rule 403 to weigh the probative value of evidence against countervailing considerations.

**6.** Nonsubstantive stylistic changes were made in 2011 to FRE 611(a). *See* FRE 611, Advisory

2.

The use of HRE Rule 611 as a source of authority to set pretrial time limits is referenced in *Doe*, which the majority characterizes as "instructive." Majority at 229, 339 P.3d at 727. *Doe* presents a similar fact pattern as this case. In *Doe*, both parents made allegations of abuse against the other. *Doe*, 98 Hawaiʻi at 146–47, 44 P.3d at 1087–88. Father presented witnesses, but mother was not able to call witnesses and her testimony was cut off by a court-imposed three-hour time limit. *Id.* at 147, 44 P.3d at 1088. Therefore, the present case and *Doe* are similar: in both cases the parents alleged abuse of the children by the other; and in both, one parent was able to present their case on the merits but the other was prevented from presenting all their evidence by a court-imposed time restriction. Although *Doe* does not prevent the family court's use of time limits, at best it offers such use faint praise.

*Doe* relies primarily upon the inherent power of the court to control the litigation process before it as the "authority to set a reasonable time limit for trials and hearings." *Id.* at 154, 44 P.3d at 1095. *Doe* cites to HRE Rule 611 as "additional[ ]" authority to control the proceeding before it, but also tempers such authority, stating that the discretion vested by HRE Rule 611 in a trial court "is not unlimited, however, and must be balanced against the rights of the parties to present their cases on the merits." *Id.* at 155, 155 n. 12, 44 P.3d at 1096, 1096 n. 12. *Doe* observes that the Advisory Committee Notes to FRE 611, "which is substantially similar to HRE Rule 611," emphasizes this balancing of interests. *Id.* "The discretion of the trial judge in controlling the proceedings [is] also limited by other considerations." *Id.* The *Doe* court therefore cautioned that the court's powers to control the proceedings under the rules of evidence are limited by the parties' rights to present their case on the merits. Accordingly, *Doe* suggests that HRE Rule 611 tempers the authority of the

Committee Notes (2011 Amendments).

court to use time limits as much as it supports their use.[7]

### 3.

In contrast to the family court, when the setting of time limits prior to the start of trial is appropriate in circuit court, the authority to do so is provided by the Hawai'i Rules of Civil Procedure (HRCP or Civil Procedure Rules). The Civil Procedure Rules affirmatively allow a trial court to issue "an order establishing a reasonable limit on the time allowed for presenting evidence" after a pretrial conference. HRCP Rule 16(c)(15) (2000); *see also* Fed.R.Civ.P. (FRCP) Rule 16(c)(2)(O) (also permitting a court in a pretrial conference to set a reasonable limit on time allowed for the presentation of evidence).

The authorization to set time limits prior to trial was added to the federal rules in 1993: one "primary purpose[ ] of the changes ... [is] ... to eliminate questions that have occasionally been raised regarding the authority of the court to make appropriate orders designed either to facilitate settlement or to provide for an efficient and economical trial." [8] FRCP Rule 16, Advisory Committee Notes (1993 Amendment).

The authority of the court to set time limits for the presentation of evidence at a pretrial conference was noted as "new" and "supplement[ing] the power of the court to limit" the presentation of evidence when the federal rule was adopted in 1993:

> [FRCP Rule 16(c)(2)(O) ] is also new. It supplements the power of the court to limit the extent of evidence under Rules 403 and 611(a) of the Federal Rules of Evidence, which typically would be invoked as a result of developments during trial.

*Id.* (emphases added). Thus, the rule adopted in the FRCP in 1993 and the Hawai'i equivalent adopted in 2000 established express authority in the circuit courts to set time limits at a pretrial conference for the presentation of evidence during trial.

The FRCP Advisory Committee Notes acknowledge the power of the court under evidentiary rules 403 and 611 to limit evidence, but observes limitations of these rules as well. The Advisory Committee Notes state that the evidentiary rules would "typically ... be invoked as a result of developments during trial," suggesting that the power granted to the court under the evidence rules to impose time limits does not become available to the court until trial. *Id.* (emphasis added). Under such a reading, the authority granted by HRE Rule 611 cannot vest in a court a source of authority to set time limits in a pretrial conference. Instead, the express authority to set times limits at a pretrial conference is provided by the civil procedure rule.[9]

---

**7.** *Doe did not rule on the use of the time limits set prior to trial, finding instead that there was no objection during trial to the time restriction and that the appeal had not raised plain error in regard to the restriction. Doe, 98 Hawai'i at 154, 44 P.3d at 1095. The Doe court noted that if counsel believed that relevant evidence must be heard after the time set for the hearing has expired, counsel must move for an extension of time. Id. However, the Doe court did rule that the family court erred in its denial of a motion for a new trial, as that "ruling resulted in the exclusion of testimony of witnesses bearing upon the issue of family violence and inferentially, the best interests of the Child." Doe, 98 Hawai'i at 155, 44 P.3d at 1096. Consequently, Doe did not address the distinction between the setting of time limits during a trial based upon trial developments and the setting of time limits at a pretrial conference.*

**8.** The 2000 amendment to the Civil Procedure Rules intended that the Hawai'i rule should match its federal counterpart and the notes to the proposed 2000 amendment indicate that the Advisory Committee Notes to the federal rule is applicable to the newly adopted Hawai'i rule. *See* Memorandum from Virginia Lee Crandall, Judge, Ninth Division and Chair of the Permanent Committee on Rules of Civil Procedure and Circuit Court Civil Rules, to Ronald T.Y. Moon, Chief Justice, Hawai'i Supreme Court (September 28, 1998) (on file with the Supreme Court of the State of Hawai'i Law Library) (recommending that the court "adopt the federal version [of rule 16]" and, under "Suggested Commentary," stating "see [Federal Rules of Civil Procedure] Rule 16 commentary and notes."). Therefore, the Advisory Committee Notes for the federal rule is cited here as an aid in interpreting the intent of the Hawai'i rule.

**9.** The Civil Procedure Rules are not applicable to family court proceedings. HRCP Rule 81(a)(4) (2006).

4.

The Hawai'i Family Court Rules (HFCR or Family Court Rules) do not grant the family court the authority to set time limits at a pretrial conference. Rule 16 of the Family Court Rules, which covers similar pretrial issue-formulating activities as Rule 16 of the Civil Procedure Rules, does not contain an express grant of authority to the family court to set time limits on trial. HFCR Rule 16 (2000).

The lack of an express grant of authority under Rule 16 of the Family Court Rules to set time limits in pretrial conference may be interpreted as a denial of that authority under that rule, when it is compared to its counterpart in the Civil Procedure Rules. Prior to 2000, Rule 16 of the Civil Procedure Rules was essentially identical to the current Rule 16 of the Family Court Rules. *Compare* HRCP Rule 16 (1972) *and* HFCR Rule 16 (2000) (neither providing express authority to set time limits on the presentation of evidence at a pretrial conference).

In 2000, Rule 16 of the Civil Procedure Rules was amended to include the authority to set time limits on the presentation of evidence. HRCP Rule 16. Rule 16 of the Family Court Rules was also last amended in 2000, becoming effective the same day as the amendment to Rule 16 of the Civil Procedure Rules that granted a trial court the express power to set time limits on the presentation of evidence. *See* HRCP Rule 16 (2000); HFCR Rule 16 (2000). Thus, in comparison with the Civil Procedure Rules, the lack of an express grant of authority under the Family Court Rules creates an inference that the family court is not empowered under the Family Court Rules to set time limits on the presentation of evidence prior to the commencement of trial.

If the Family Court Rules were intended to provide the family court with the authority at a pretrial conference to limit the presentation of evidence during trial, the rules would have so stated. For example, the Family Court Rules expressly grant the family court the authority to utilize a pretrial conference to set limits on "the number of expert witnesses." HFCR Rule 16(5). The Family Court Rules could have provided similar authority for time restrictions as well. Correlatively, the Civil Procedure Rules expressly allow both the setting of "limitations or restrictions" on the use of expert testimony and issuance of orders "establishing a reasonable limit on the time allowed for presenting evidence." HRCP Rule 16(c)(4), (c)(15).

The majority also reasons that Rule 16 of the Family Court Rules provides a "catch-all" provision that empowers the family court to use time limits.[10] Majority at 234–35 n. 5, 339 P.3d at 732–33 n. 5. However, the Civil Procedure Rules contain a similar catch-all provision.[11] HRCP Rule 16(c)(16). If the catch-all provision were sufficient to permit the setting of time limits in a pretrial conference, then the express provision permitting use of time limits in Rule 16(c)(15) of the Civil Procedure Rules would be superfluous. Such a reading of this rule would be in violation of the principle that "[c]ourts are bound to give effect to all parts of a statute, and that no clause, sentence, or word shall be construed as superfluous, void, or insignificant if a construction can be legitimately found which will give force to and preserve all words of the statute." *Ass'n of Condo. Homeowners of Tropics at Waikele ex rel. Bd. of Dirs. v. Sakuma,* 131 Hawai'i 254, 256, 318 P.3d 94, 96 (2013).[12] Thus, the omission of an equivalent authority in the Family Court Rules remains significant.[13]

**10.** "In any action, the court may in its discretion direct the attorneys for the parties to appear before it for a conference to consider: ... (7) Such other matters as may aid in the disposition of the action." HFCR Rule 16(7).

**11.** "At any conference under this rule consideration may be given, and the court may take appropriate action, with respect to ... (16) such other matters as may facilitate the just, speedy, and inexpensive disposition of the action." HRCP Rule 16(c)(16).

**12.** When interpreting rules promulgated by the court, principles of statutory construction apply. *State v. Lau,* 78 Hawai'i 54, 58, 890 P.2d 291, 295 (1995).

**13.** The majority also reasons that the Family Court Rules omit other powers included in the Civil Procedure Rules that would not be denied by implication, citing as an example Rule 16(c)(11) of the Civil Procedure Rules, authorizing the court to "take appropriate action, with respect to ... disposition of pending motions" in

### 5.

This court has recognized that a trial court's power to set reasonable time limits for a trial also stems from its "inherent equity, supervisory, and administrative powers as well as inherent power to control the litigation process before them." *Doe*, 98 Hawai'i at 154–55, 44 P.3d at 1095–96 (quoting *Sport Shinko*, 76 Hawai'i at 507, 880 P.2d at 182).[14] However, setting time limits on trials based on inherent judicial power should be distinguished from the preferred method of controlling the duration of the trial via assessment of particular evidence for relevance, materiality, unfair prejudice, undue delay, or needless presentation of cumulative evidence, in accordance with the rules of evidence.

Unlike the inherent power to set time limits on trial, the rules of evidence are structured such that the "parties may present to the court or jury all the evidence that bears on the issues to be decided .... unless there is some ... distinct ground for refusing to hear the evidence." 1 George E. Dix, et al., *McCormick On Evidence* § 184 (Kenneth S. Broun, ed., 7th ed. 2013) (emphasis added). For example, the rules of evidence require a balancing test prior to excluding relevant evidence under HRE Rule 403, and authorize reasonable control "for the ascertainment of the truth, [and to] avoid needless consumption of time." HRE Rule 611 (emphasis added).

Inherent powers require no such particularized deliberation, and run the risk of arbitrariness that should be avoided in the face of fundamental liberty interests. Therefore, the "trial court may abuse its discretion when it excludes non-cumulative, probative evidence because its introduction would take longer than the court had set aside for trial." *Weinstein's Federal Evidence* § 611.02[2][b][ii].

[T]he possibility of confusion through the exposition of a mass of details is not in itself sufficient reason for refusing to hear those details, where complication is inherent in the issue. ... It is where the complication and confusion are substantially unnecessary, or the small value of the evidence is overwhelmed by its disadvantages, that a rule of evidence may properly intervene in prohibition.

6 John Henry Wigmore, *Evidence in Trials at Common Law* § 1907 at 749–50 (James H. Chadbourn rev. 1976) (emphasis added). Time limits "by their very nature ... can result in courts dispensing with the general practice to evaluate each piece of offered evidence individually." *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 609–610 (3d Cir.1995).

Use of inherent authority of the court raises the additional problem that clear procedural protections are not provided to litigants. Under the civil rules, procedural protections are generally integrated into the rules themselves and often noted in the commentary. For instance, Rule 16 of the Family Court Rules requires the court, at a minimum, to attempt to seek agreement with the

---

pretrial conference, which is not included in the equivalent family court rule. Majority at 234–35 n. 5, 339 P.3d at 732–33 n. 5; *compare* HRCP Rule 16(c)(11) *and* HFCR Rule 16. However, Rule 16(c)(11) of the Civil Procedure Rules is a targeted rule "enabl[ing] the court to rule on pending motions for summary adjudication that are ripe for decision at the time of the conference." FRCP Rule 16, Advisory Committee Notes (1993 Amendment). There is no reason to conclude that Rule 16 of the Family Court Rules implicitly provides such authority. *See* HFCR Rule 56(c), (d) (referring to "the hearing," suggesting that a hearing is required). Additionally, Rule 16 of the Family Court Rules concludes:

The court shall make an order which recites the action taken at the conference, the amendments allowed to the pleadings, and the agree-

ments made by the parties as to any of the matters considered, and which limits the issues for trial to those not disposed of by admissions or agreements of counsel.

. . .

HFCR Rule 16. Thus, Rule 16 of the Family Court Rules only allows limits on the issues for trial to those "not disposed of by admission or agreements," not summary adjudication. It follows that the disposition of pending motions ripe for summary adjudication is therefore not a power that "clearly [is] not denied by implication based on [its] exclusion from [Rule 16 of the Family Court Rules]." Majority at 234–35 n. 5, 339 P.3d at 732–33 n. 5.

14. The majority apparently relies on the inherent authority of the family court to set time limits, as no other source is specifically indicated. *See* Majority at 234–35 n. 5, 339 P.3d at 732–33 n. 5.

parties in setting orders in pretrial conference regarding trial: "The court shall make an order which recites the action taken at the conference, the amendments allowed to the pleadings, and the agreements made by the parties as to any of the matters considered...." Thus, if the use of time limits was prescribed by the Family Court Rules, procedural protections would likely have been supplied within the rule. In contrast, proceeding upon inherent authority means that time limits will be imposed on a court-by-court, case-by-case application without the benefit of expressed procedural provisions.

Therefore, reliance upon the inherent authority to set time limits in family court cases involving child custody determinations should be disfavored, and the court rules and the rules of evidence should be applied instead.

### C.

If the family court is authorized to set time limits on the presentation of evidence prior to trial under the inherent power of the court, then the court must follow procedures that ensure the parties' right to present their case fully on the merits is not infringed upon.

### 1.

The Advisory Committee Notes to the FRCP indicate that, under ordinary circumstances, parties are owed procedural protections when a court issues a pretrial order to place time limits on the presentation of evidence. "Any such limits must be reasonable under the circumstances, and ordinarily the court should impose them only after receiving appropriate submissions from the parties outlining the nature of the testimony expected to be presented through various witnesses, and the expected duration of direct and cross-examination." FRCP Rule 16, Advisory Committee Notes (1993 Amendment) (emphases added).[15]

Thus, "a district court should impose time limits only when necessary, after making an informed analysis based on a review of the parties' proposed witness lists and proffered

testimony, as well as their estimates of trial time." *Duquesne Light Co.*, 66 F.3d at 610; *see also* Majority at 231, 339 P.3d at 729 (acknowledging *Duquesne Light Co.*'s requirements). Without such a process, time limits would inherently be arbitrary; at a minimum, the setting of time restrictions requires a case-by-case approach.

Rule 16 of the Family Court Rules similarly indicates that the parties must be given procedural protections.

> The court shall make an order which recites the action taken at the conference, the amendments allowed to the pleadings, and the agreements made by the parties as to any of the matters considered, and which limits the issues for trial to those not disposed of by admissions or agreements of counsel; and such order when entered controls the subsequent course of the action, unless modified at the trial to prevent manifest injustice.

HFCR Rule 16 (emphasis added). That is, Rule 16 of the Family Court Rules, which governs the family court's use of pretrial procedure and which, under the majority's interpretation allows for pretrial orders setting time limits on the presentation of evidence during trial, requires that the order should "recite[] ... the agreements made by the parties as to any of the matters considered." *Id.* (emphasis added). Thus, the court must hear the parties on the subject matter of the order and at least attempt to obtain the parties' agreement.

Therefore, in accordance with the Advisory Committee Notes to FRCP Rule 16, which is incorporated into the Civil Procedure Rules, and the dictates of Rule 16 of the Family Court Rules (the order must "recite[] ... agreements"), a court may not issue a pretrial order to impose time restrictions on the presentation of evidence at trial without providing the parties an opportunity to be heard on the evidence they intend to present. Such an evaluation must consider the number of witnesses the parties intend to present and elicit counsel's estimation of the expected duration of direct—and cross-examination of

---

15. Such procedural protections would also be applicable to Rule 16 of the Civil Procedure

Rules. *See* note 8, *supra.*

each witness to ensure that adequate opportunity is provided to present that evidence to the court. The time restriction should also consider other matters and circumstances that may affect the duration of the trial, such as the testimony of child witnesses, use of interpreters, presentment of audio or video recordings, motions in limine, trial motions, and opening statements and closing arguments.

There is no indication in the record of this case that the court imposed the three-hour time limit after hearing from the parties as to the evidence they intended to present at trial. The time limit was set four months before the parties exchanged their list of witnesses. Without such information, it would not have been feasible for the court or the parties to reasonably estimate the time needed for trial.[16] Thus, the family court's time limits in the present case would be arbitrary if those limits were set without the requisite information and without an attempt to gain agreement of the parties as to the time restriction.

### 2.

Where authorized, reasonable time limits established before the presentation of evidence has commenced may serve a useful purpose in some types of trials. However, unlike imposing a mere three-hour limit on private parties in a child custody determination involving accusations of family violence, the leading cases cited in favor of overall time limits are generally large, complex civil trials.[17] These cases frequently entail longer time limits. Even in jurisdictions in which time limits have been affirmed in family court cases, those time limits are much longer than three hours, and it is frequently dispositive in such cases whether the party seeking review objected before or at trial, because a timely objection would have given the court the opportunity to prevent error.[18]

16. Subsequently, Mother's witness list indicated she intended to call nine lay witness and two expert witnesses. At trial, Mother called five of the witnesses on her list, including herself, in the time allotted. The record does not indicate whether Mother intended to call all six remaining witnesses.

17. The following cases are cited in *Weinstein's Federal Evidence: In re City of Bridgeport,* 128 B.R. 589, 592 (Bankr.D.Conn.1991) (in a municipal bankruptcy, providing twenty-six hours for presentation of evidence per side); *Tabas v. Tabas,* 166 F.R.D. 10, 13 (E.D.Pa.1996) (in a civil suit involving distribution of partnership assets, each side provided 30–hours for presentation of evidence); *Deus v. Allstate Ins. Co.,* 15 F.3d 506, 520 (5th Cir.1994) (in a suit by a former employee against an employer, each side provided three days to present their case); *United States v. Reaves,* 636 F.Supp. 1575, 1577 (E.D.Ky.1986) (in criminal tax fraud, state limited to ten days to present its case in chief); *Duquesne Light Co. v. Westinghouse Elec. Corp.,* 66 F.3d 604, 608–611 (3d Cir.1995) (280–hour time limit not found unreasonable in a civil breach of contract and warranty case brought by a large electric utility against a supplier of nuclear steam supply systems); *United States v. Midgett,* 488 F.3d 288, 300 (4th Cir.2007) (time restrictions were announced only after lengthy interrogation had drifted into areas of less obvious relevance; in subsequent recross-examination, the defense lawyer was permitted to ask questions without restriction); *MCI Commc'ns Corp. v. Am. Tel. & Tel. Co.,* 708 F.2d 1081, 1170–72 (7th Cir.1983) (26–day time limit found reasonable in an antitrust action between telephone companies); *Gen.*

*Signal Corp.,* 66 F.3d at 1508 (14–day time limit not found unreasonable in a breach of contract and fraud case brought by telecommunications device developer against a long-distance telephone company); *see also FDIC v. W.R. Grace & Co.,* 691 F.Supp. 87, 94 (N.D.Ill.1988) (in a suit by a federal agency to recover damages resulting from fraud, defendant prevented from re-reading certain depositions that had already been introduced into evidence by plaintiff, no limits on time imposed); *United States v. Bonanno,* 852 F.2d 434, 439 (9th Cir.1988) (in criminal trial, defense counsel limited by court as to subject matter after eight days of cross examination, time limits not imposed); *Elgabri v. Lekas,* 964 F.2d 1255, 1259 (1st Cir.1992) (in an antitrust action between physicians court set subject matter limits, not time limits).

18. The cases cited by the majority in support of the pretrial imposition of time limits on the presentation of evidence are distinguishable from the present case. *See Varnum v. Varnum,* 155 Vt. 376, 586 A.2d 1107, 1114–15 (1990) (upholding the decision from a five-day trial with a "time limit ... set at eleven hours for each side;" counsel "indicated no objection when the evidence was terminated by the court.") (emphasis added); *see also In re ARF,* 307 P.3d 852, 859 (Wyo.2013) (no allegations of abuse, limits were set in pretrial with the parties, no new information at trial, party seeking review did not object in pretrial or at trial); *Goodwin v. Goodwin,* 618 So.2d 579, 584 (La.Ct.App.1993) (same, but eight-day trial); *Young v. Pitts,* 335 S.W.3d 47, 61 (Mo.Ct.App.2011) (each side given 7.5 hours, additional evidence was properly excluded as

The time limits must be justifiable, because "every litigant has a right to introduce competent evidence supporting his or her case." *Gray v. Pearson,* 797 So.2d 387, 394 (Miss.Ct.App.2001). Time "limits must be reasonable and sufficiently flexible to ensure that important evidence is not excluded due to artificial time constraints." *Varnum v. Varnum,* 155 Vt. 376, 586 A.2d 1107, 1115 (1990), *accord State v. Streich,* 163 Vt. 331, 658 A.2d 38, 53–54 (1995); *see also Holland v. Scallon,* 1 CA–CV 12–0210, 2013 WL 557219 (Ariz.Ct.App. Feb. 14, 2013) ("[U]nder our state and federal constitutions, any time limits imposed by the court must provide a litigant with a reasonable opportunity to be heard."); *Torres v. Ryan,* CIV 10–2205–PHX–NVW, 2011 WL 3799691 (D.Ariz. Aug. 5, 2011) (constitutional rights are violated by limits on cross-examination when relevant testimony is excluded to the prejudice of the defendant); *Lentz v. Cincinnati Ins. Co.,* 1:01CV599, 2006 WL 2860974 (S.D.Ohio Oct. 4, 2006) (trial court repeatedly extended nominal time limits and allowed presentation of evidence planned for five days to extend to nine days).

"Rigid time limits without flexibility, depending on what takes place at trial, are 'inappropriate.'" *Weinstein's Federal Evidence* § 611.02[2][b][ii] (citing *Ashby,* 808 F.2d at 678). Thus, time limits that are "unrelated to the nature and complexity of the case or the length of time consumed by other witnesses" may constitute an abuse of discretion. *Barksdale v. Bert's Marketplace,* 289 Mich.App. 652, 797 N.W.2d 700, 703 (2010).

### D.

When deciding whether to extend a court-imposed time limit in a trial determining custody, a single standard should guide the family court: whether the evidence is probative to determining the best interests of the child. In other words, the fact that the time restriction was imposed in a pretrial conference should be of no consideration in determining the admissibility of noncumulative probative evidence that would require an extension of the time limit.

While courts must frequently evaluate offers of proof against the objection to the proposed evidence by an adverse party, the "adverse party" in a motion for extension of time is the court-imposed time restriction. The court's evaluation of an offer of proof to support a motion for extension must be properly calibrated to consideration of the best interests of the child. If the evidence is admissible and probative to the determination of the custody of the child, then there would appear to be no valid basis to not allow an extension of the time deadline.

Additionally, a party's right to present probative evidence should not be judged by efficiency standards. When time restrictions have <u>not</u> been imposed, the court's determination of whether to admit further evidence does not depend on counsel's performance as measured by the court. In this context, counsel's efficiency is irrelevant.

However, *Doe* and this case demonstrate that the use of time limits on the presentation of evidence at trial creates a significant danger that the court will evaluate a request to extend time by evaluating the efficiency of the attorney's presentation. In the present case, the family court repeatedly evaluated the efficacy of counsel's performance in order to maintain its arbitrarily imposed time limit: "We're going to finish this case at 4:30 today, so, Counsel, use your time wisely. Because if we don't get to an opportunity to hear from your client, that will be based upon your choice." Later, when the motion for an extension of time was made, the court disparaged counsel's efficiency:

COURT: ... Counsel, you have two minutes left.

COUNSEL: Your Honor, I'm going to move for an extension of time. Um, the reason is—

COURT: ...

... But each and every of the other witnesses I said we're running on a time crunch. <u>Um, you know, I gave you that</u>

---

duplicative or irrelevant); *Moore v. Moore,* 757 So.2d 1043, 1046 (Miss.Ct.App.2000) (party seeking review never objected to the time limits at trial).

opportunity. You still decided to call the other witnesses. . . .

. . .

COUNSEL: I understand, Your Honor. But each witness was important, and that witness has something to say about domestic violence.[19]

COURT: I understand. But you still,—we still have the time constraints that we do have. You knew about them. So, as counsel, you were permitted to use time as you felt, uh, you needed to use them best. So I allowed you to do that. So continue. Use the rest of your time wisely.

(Emphases and footnote added). When the motion was later renewed, the Court again ignored the potential probity of the evidence sought to be introduced and continued to focus on counsel's use of time.

COUNSEL:—again I would renew my motion for an extension of time. Three hours is not enough for this trial. This trial involved complex issues.

. . .

COURT: [T]hat's why I kept on trying to tell you get—you know, to the—I wanted to hear about the two parents. I wanted to hear from dad. I wanted to hear from mom. I wanted to hear from the custody evaluator. Unfortunately the other three witnesses took up time that otherwise could have been allocated to mom.

(Emphases added). Thus, prompted by its self-imposed time restriction, the family court analyzed the efficiency of counsel's performance, rather than the probative nature of the evidence sought to be presented.

The Intermediate Court of Appeals' (ICA) majority opinion in this case also exemplifies how a reviewing court may evaluate counsel's strategic decisions for efficiency. *See AC v. AC and Child Support Enforcement Agency,* No. CAAP–12–0000808, 130 Hawai'i 303, 2013 WL 3927738 (App. July 30, 2013) (SDO). The ICA majority held that there was no error in the family court's denial of Mother's motion to extend time. *Id.* at *4. The holding emphasized Mother's strategic decisions,

suggesting that when "the family court warned Mother's counsel that time was running out," Mother's counsel ineffectively used the remaining time because "counsel did not question Mother regarding any alleged violence, but instead, asked . . . other questions unrelated to the issue of family violence." *Id.* at *3. The ICA majority further criticized Mother's counsel for "provid[ing] no offer of proof or specifics as to the type of further testimony that would be expected of Mother or the testimony of Mother's remaining witnesses, only that they had 'something to say about domestic violence.' " *Id.* Thus, rather than viewing the potential evidence through the lens of the best interests of the children, the ICA majority's opinion is guided by enforcement of the court-imposed deadline.

Although the majority vacates and remands this case for further proceedings, it is not clear as to the appropriate standard that a court should apply when a request for an extension of the time restriction is made during trial. The majority states that

[n]one of [the] factual distinctions override the critical similarity between *Doe* and the instant case: that "the family court's ruling resulted in the exclusion of testimony of witnesses bearing upon the issue of family violence and, inferentially, the best interests of [the children]." . . . Here, as in *Doe,* the main issue is whether the excluded testimony was pertinent to the best interests of the children.

Majority at 230, 339 P.3d at 728 (emphasis added). This may suggest that the family court must limit its consideration of a motion to extend time to the probity of the evidence sought to be presented and whether the determination of the best interests of the child would be furthered by the presentation of such evidence. Similarly, the majority states that "[i]mportant constitutional interests provide additional reason to providing parents a full and fair opportunity to present their case in custody decisions." *Id.* at 233, 339 P.3d at 731. This may indicate that the family court should liberally construe a motion for extension of time in favor of the party making the request.

19. *See* note 3, *supra,* for discussion of this gram- matically awkward sentence.

However, the majority states that the probity of evidence is one factor in the family court's decision to extend time; one that is required but not determinative. Majority at 231–32, 339 P.3d at 731–32. Thus, the majority establishes the probative nature of the evidence as a mandatory but not necessarily dispositive consideration in the family court decision as to whether or not to grant an extension of time. The majority also looks at other elements of the trial to conclude that the family court's "enforcement of its time limit was not reasonable." *Id.* at 231, 339 P.3d at 731. First, the majority finds that "[n]o offer of proof was thus necessary [to support an extension of time] in the instant case." *Id.* at 230, 339 P.3d at 728. An offer of proof is not necessary if "the substance of the evidence" is "apparent from the context." HRE Rule 103(a)(2) (2013).[20] Here, the context was apparent because Mother would have had personal knowledge of any domestic violence. *See* Majority at 230, 339 P.3d at 728. However, it is not clear whether the majority's conclusion applies to Mother only or includes any remaining witnesses, or whether the standard the majority has applied in order to find an offer of proof was unnecessary is based on the court's inquiry into the best interests of the child or Mother's personal knowledge of domestic violence.

Further, it is noted that the family court in this case did not seek an offer of proof from counsel. The court did state, "Tell me why," but then did not pause to allow counsel to explain. In cases where the court is required to decide custody "in the best interests of the child" and the child is not represented, if an offer of proof is not included in counsel's motion seeking an extension of time, the court should affirmatively request an offer because it is the court-imposed time restriction that has created the need for the extension.

Second, the majority notes that the procedural protections required under *Duquesne* were not followed. Majority at 231, 339 P.3d at 729. However, whether procedural pro-

tections were provided in setting the original time restrictions should not bear on whether a party needs additional time to present probative evidence. The <u>only</u> standard that should be applied is whether the evidence sought to be introduced is probative and admissible and would further the court's determination of the best interests of the child.

Finally, the majority also analyzes counsel's performance for efficiency, concluding that each of the witnesses' testimony related to the two critical issues and therefore counsel's presentation was sufficient to garner extra time. Majority at 231, 339 P.3d at 729 (disagreeing with the family court's decision to deny the motion to extend time because Mother's witness provided "relevant testimony on two critical issues"). It is unclear what would have been the disposition of this case if the testimony of one of the witnesses had not related to the critical issues, or if the testimony of Mother's witness had only been partially relevant. As stated above, the family court is statutorily mandated to decide the case based on the best interests of the children, and therefore the efficiency of counsel should not be a factor if additional evidence would further the resolution of the children's best interest.

Thus, the majority's decision requires the family court to "consider whether the proposed testimony is pertinent to the best interests of the child" in an evaluation of a motion to extend time. Majority at 233, 339 P.3d at 732. However, it is unclear whether the majority's decision also permits the family court, in determining whether to extend a time restriction to assess the efficiency of counsel, consider whether the procedural protections of *Duquesne* were sufficiently followed, or require a detailed offer of proof. *Id.* at 230–31, 339 P.3d at 728–29.

Parties in family court should not be disadvantaged in presenting their case because time restrictions were set prior to trial. Regardless of whether time limits have been

---

**20.** HRE Rule 103 states that a ruling excluding evidence is not in error unless a substantial right of the party was affected and "the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked." HRE Rule 103(a)(2).

set, the introduction of evidence in custody proceedings in family court should be governed by the same test: whether the evidence is probative for determining the best interests of the child, and whether any rule of evidence would exclude it.

### E.

Custody cases involving allegations of abuse present special concerns that vastly outweigh any efficiency gained by imposing time limits on the presentation of evidence.[21] Many of those concerns have already been addressed. To briefly reiterate, this court must protect the fundamental constitutional liberty interests involved in a child custody case: the procedural right to present one's case fully on the merits, and the right to retain custody of one's child. Second, there is no express authority for the family court, in a pretrial conference, to set time limits on the presentation of evidence during trial. The court's use of its inherent authority should be disfavored because inherent powers do not have prescribed balancing limitations and risk arbitrary infringement on fundamental liberty interests. Third, in setting time limits prior to trial based on the inherent power of the court, a court is required to provide procedural protections when the time requirement is set, basing any restriction on sufficient information regarding the particular circumstances of the case and providing the parties an opportunity to be heard on the proposed restriction. Finally, there is a risk that a trial court evaluating a motion to extend time will decide the motion based on the efficiency of the counsel's presentation, the adequacy of the offer of proof, or the degree of miscalculation made at the pretrial conference, rather than on the probity of the evidence.

Additional concerns should also be recognized. The harm of a trial court's erroneous determination in a child custody decision is magnified in its effect. Placement of a child with the wrong parent can potentially subject the child to continued abuse, and the right of appeal is insufficient to protect against the potential results of a flawed trial court custody decision while a reviewing court determines whether a time limit was reasonable in its application. A trial court's child custody decision leaves the non-party child in an especially vulnerable position; therefore, it is crucial that the court be fully informed of all admissible probative evidence propounded by a party when making the determination of custody.

Further, time limits distract the court's attention from the administration of justice.

> [W]e disapprove of the practice of placing rigid hour limits on a trial. The effect is to engender an unhealthy preoccupation with the clock, evidenced in this case by the extended discussion between counsel and the district judge ... over the precise method of time-keeping—a method that made the computation of time almost as complicated as in a professional football game.

*Flaminio v. Honda Motor Co., Ltd.*, 733 F.2d 463, 473 (7th Cir.1984) (emphasis added); *accord Monotype Corp. PLC v. Int'l Typeface Corp.*, 43 F.3d 443, 450–51 (9th Cir.1994). The precise danger described in *Flaminio* of "preoccupation with the clock" occurred in this case; the trial judge placed himself in the role of a timekeeper, providing numerous updates to advise counsel of the impending time limit expiration, and calculating the minutes used by counsel on direct and cross-examination.

Imposing time limits on trial presents an additional danger of inducing counsel, in an attempt to meet court-imposed deadlines, to decline to present probative evidence that could, in the absence of time limits, otherwise help the trier of fact identify the child's best interest. "[V]igorous and zealous advocacy is a necessary component of our judicial system." *Office of Disciplinary Counsel v. Breiner*, 89 Hawai'i 167, 171, 969 P.2d 1285, 1289 (1999). "Appellate courts must ensure that trial judges ... are not chill[ing] effective advocacy." *See id.* at 172, 969 P.2d at 1290 (quoting *In re Dellinger*, 461 F.2d 389, 398 (7th Cir.1972)). Asking counsel to select only a portion of the probative, non-cumula-

---

21. The arguments against the use of time limits in custody trials involving allegations of physical abuse would apply equally to custody trials involving allegations of sexual abuse.

tive evidence in order to satisfy a court-imposed time restriction, impairs "vigorous and zealous advocacy." [22] *Id.* at 171, 969 P.2d at 1289. When, as in this case, the client's interests serve as a proxy for the paramount interests of the non-party child, the countervailing interest in judicial efficiency should bow to the fundamental need for vigorous advocacy on behalf of the client and full presentation of probative evidence.[23]

Finally, child custody cases are uniquely decided according to the best interests of the child. HRS § 571–46(a)(1). Our courts should exercise the utmost caution in excluding evidence that may be material to establishing the best interest of the non-party child. The court's legitimate interest in judicial efficiency must be weighed against the paramount consideration, determining the best interest of the child. This consideration is heightened when there are allegations of domestic violence because of the concerns for the physical and emotional well-being of the child.

In light of these considerations, I would preclude the family court in custody trials involving allegations of family violence from setting time limits in a pretrial conference or pretrial hearing.[24] The family court's ability to function efficiently will not be unduly burdened by this preclusion. The rules of evidence remain in effect; the court's ability to limit cumulative evidence or prevent waste of

time is firmly established. Further, the evidence rules are designed to exclude evidence under appropriate circumstances without unjustly imposing upon fundamental rights, which they effectively accomplish in felony trials in our circuit courts <u>without</u> the imposition of time limits.

### III. Conclusion

Given the enormity of the effects of child custody decisions upon the child, the family, and the community, the risk that time limits on trial may exclude probative evidence and hinder the ascertainment and just determination of truth does not warrant the potential savings in judicial resources. *See* HRE Rule 102 (1980).[25] Society's concern for the quality of custody decisions and public confidence in the judicial system also argue against the imposition of time limits in child custody trials involving allegations of physical violence. Therefore, time limits should be limited to the category of cases in which the need for efficiency does not hinder the search for truth. Child custody cases involving allegations of family violence do not fall within this category.

I would vacate and remand this case for a new trial, and preclude the use of time limits on the presentation of evidence in cases determining the custody of children when there

---

22. For instance, counsel may, in an effort to comply with a court-imposed time limit, choose between witnesses to satisfy the time restriction, rather than according to the probity of the evidence.

23. Relatedly, domestic violence is often difficult to prove. The setting for this crime—in the victim's home and by the person nominally responsible for their well-being—may make victims reticent to testify about their abuse. There may be no non-party witnesses to the abuse, forcing counsel to present circumstantial evidence or expert testimony. Similarly, witnesses will frequently be other members of the household who may feel similar conflicting loyalties. Under such circumstances, a party should not face the additional burden of ensuring that the proof is presented in the time allotted before trial begins, without having had a full opportunity to collect enough information to make a reasonable estimate in setting limits at the pretrial conference.

24. "The supreme court shall have the general superintendence of all courts of inferior jurisdiction to prevent and correct errors and abuses therein where no other remedy is expressly provided by law." HRS § 602–4 (1993); *see State v. Fields,* 67 Haw. 268, 276, 686 P.2d 1379, 1386 (1984) (invoking supervisory power in regulating searches of probationers); *Gannett Pac. Corp. v. Richardson,* 59 Haw. 224, 227–235, 580 P.2d 49, 53–57 (1978) (invoking supervisory power to require courts to undertake procedures to protect a defendant's right to a public trial when considering whether to close a preliminary hearing to protect the defendant's right not to have potential jurors prejudiced by evidence subsequently determined to be inadmissible).

25. "These rules shall be construed to secure fairness in administration, elimination of unjustifiable expense and delay, and promotion of growth and development of the law of evidence to the end that the truth may be ascertained and proceedings justly determined." HRE Rule 102.

have been allegations of family violence by a party. Given the unique liberty interests present in such cases and the inability of appellate review to provide meaningful relief to a child placed with an abusive parent, the family court's decision must be based upon its consideration of all the admissible probative evidence that bears on the paramount concern—the best interest of our children.